UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ICE CREAM LIQUIDATION, INC., Formerly known as Fieldbrook Farms, Inc., Individually and on behalf of all others similarly situated, <br> Plaintiff, <br><br> v. <br><br> LAND O'LAKES, INC.; DAIRY FARMERS OF AMERICA, INC., ASSOCIATED MILK PRODUCERS, INC.; GRASSLAND DAIRY PRODUCTS, INC.; KELLER'S CREAMERY LLC; LEVEL VALLEY CREAMERY, INC.; AND MADISON DAIRY PRODUCE COMPANY; <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 302CV377 (WWE) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## JOINT STATEMENT IN SUPPORT OF SETTLEMENT

Plaintiff, Ice Cream Liquidation, Inc., and Defendants, Land O'Lakes, Inc., Dairy Farmers of America, Inc., Associated Milk Producers, Inc., Grassland Dairy Products, Inc., Keller's Creamery, L.P., and Madison Dairy Produce Company (collectively "Defendants")[1] jointly submit this statement in support of the settlement reached between Defendants and Plaintiff, individually.

---

[1] Plaintiff originally named Level Valley Creamery, Inc. as a defendant as well. However, four months after filing this action, plaintiff agreed to voluntarily dismiss Level Valley.

## Background

A. **The Action.**

On March 1, 2002, Ice Cream Liquidation, Inc., a debtor in a Chapter 11 bankruptcy proceeding,[2] brought this action under §1 of the Sherman Act on behalf of a putative class of wholesale purchasers of milk, cream and/or butter, contending that, from November 2, 2000 to September 14, 2001, Defendants conspired to fix the wholesale prices of those dairy products at levels higher than fair market prices.[3] On May 17, 2002, Defendants jointly moved to dismiss the Complaint in its entirety. Defendants' joint motion to dismiss was fully briefed and a hearing was held on September 4, 2002. On March 27, 2003, this Court denied Defendants' motion. Thereafter, the parties engaged in limited written discovery and document production.

On April 30, 2002, Plaintiff filed a motion for class certification. The class certification issue was never fully briefed; a hearing on the propriety of class certification was never held; and this Court never issued a ruling on whether this case could be maintained as a class action.

B. **The Parties Begin to Discuss the Possibility of Settlement.**

After Defendants' motion to dismiss was denied, all of the parties recognized that, while they believed they had meritorious arguments on the issue of class certification and the ultimate merits of the case, the class certification and discovery phases of the litigation would be costly and protracted. As a result, in or around September, 2003 the parties began

---

[2] Ice Cream Liquidation, Inc. is the name that was given to the bankruptcy estate of Fieldbrook Farms, Inc. after all of its operating assets were sold.

[3] On February 28, 2002, Schatz & Nobel, P.C. was approved by the Bankruptcy Court as counsel for Ice Cream Liquidation, Inc. to pursue the claims asserted in this action. Pursuant to the Bankruptcy Court's approval, Schatz & Nobel, P.C. would be allowed to seek reimbursement of its expenses plus fees up to one-third of any recovery. A copy of that order is attached as Exhibit 1.

discussions of whether it might be possible to settle this case. The issue of class certification had not yet been joined, so the parties agreed to attempt to negotiate a settlement of Plaintiff's individual claim.

### C.   The Mediation.

All of the parties agreed that mediation would be the best possible means to exploring a possible settlement. To that end, the parties jointly engaged as a mediator the Honorable Nicholas H. Politan, a retired federal district court judge from the United States District Court for the District of New Jersey. During his years on the federal bench and as a highly regarded mediator, Judge Politan has had substantial experience with complex matters, including antitrust cases.

Plaintiff and Defendants submitted competing mediation statements and supporting materials to Judge Politan for his consideration in advance of the mediation. On March 2, 2004, counsel for all the parties, a representative of Plaintiff, and representatives from the defendant companies met in Chicago for the mediation.

The parties engaged in an entire day of hard-nosed mediation and negotiation. Indeed, the mediation went beyond the time originally allotted, and several airline arrangements were changed to allow the parties to continue the mediation process. At the end of a long day, all of the parties had moved substantially from their original negotiating positions, but were unable to reach an agreement. However, a settlement seemed to be within striking distance. The parties therefore agreed to continue negotiations to see if they could close the small gap that remained between them.

D.   **An Agreement is Reached.**

After the mediation, the parties continued to negotiate the minor differences that remained between them. In mid-April 2004, the parties reached an agreement in principle. Defendants agreed to collectively pay $1,250,000 to Plaintiff to settle Plaintiff's individual claim, and Plaintiff agreed to voluntarily dismiss with prejudice its claims against Defendants. Plaintiff's counsel, Schatz &Nobel, P.C., sought and obtained from the counsel to the Debtor and the counsel to the Unsecured Creditors Committee approval of the settlement terms. Thereafter, numerous draft settlement agreements were exchanged, and a final agreement was reached on April 27, 2004. A copy of the Confidential Settlement Agreement and General Release (the "Settlement Agreement") entered into by the parties is attached hereto as Exhibit 2. For the reasons set forth below, this Court should approve the Settlement Agreement.

## Legal Basis

Fed. R. Civ. P. 23(e) requires court approval of the voluntary dismissal of a class action. At the pre-certification stage, however, substantive oversight is unnecessary because there is no res judicata effect with respect to the uncertified class. In re Austrian and German Bank Holocaust Litig., 2001 WL 228107 at *4 (S.D.N.Y. Mar. 8, 2001). The Court need only consider two factors in determining whether to grant dismissal: (1) whether the dismissal is the product of collusion; and (2) whether dismissal would prejudice other class members. Id. at *4 & n.9 (citing Shelton v. Pargo, Inc., 582 F.2d 1298, 1315 (4th Cir. 1978)); see also Chichilnisky v. Trustees of Columbia Univ., 1993 WL 452526 at *1 (S.D.N.Y. Nov. 3, 1993); Jaen v. New York Telephone Co., 81 F.R.D. 696, 697 (S.D.N.Y. 1979). Courts accord less weight to the second factor because the dismissal would not bind other class members, making any prejudice unlikely. In re Austrian and German Bank Holocaust Litig., 2001 WL 228107 at *4. Rather, the

courts focus their inquiry on the compensation to the plaintiff and counsel and whether they appear to be compromising the class claim to their own pecuniary advantage. Id. As long as the settlement satisfies this test, the court should approve it, and notice to the putative class is not required. Id.; Jaen, 81 F.R.D. at 697. The Settlement Agreement in this case meets these requirements and, therefore, should be approved by this Court.

    A.    **The Settlement Agreement is Not the Product of Collusion.**

There clearly is no collusion by Plaintiff's counsel who is financially disadvantaged by the individual settlement. The expenses and attorneys' fees incurred are far more than Plaintiff's counsel is permitted to seek from the Bankruptcy Court pursuant to the Bankruptcy Court's order authorizing the employment of Plaintiff's counsel. The Bankruptcy Court's order allows Plaintiff's counsel to seek reimbursement of its expenses and fees of no more than one third of the proceeds of this settlement. Affidavit of Robert A. Izard, Debtor's Application to Employ Special Litigation Counsel, 2/12/04, ¶ 4 Exhibit 3. Since the proceeds from this individual settlement can reasonably be assumed to be much less than what might have been obtained in a classwide settlement, the recoverable attorneys' fees are also diminished.

Specifically, Plaintiff's counsel, Schatz & Nobel, P.C., has incurred expenses of $37,673.14, and its attorneys' fees, at its regularly charged rates, are $484,406.43, as set forth in the Declaration of Robert Izard, attached hereto as Exhibit 4. Schatz & Nobel, P.C. was assisted by the law firm of Cummings & Lockwood, who has incurred expenses of $5,609.43, and its attorneys' fees, at its regularly charged rates, are $49,552.50, as set forth in the Declaration of John Carberry, attached hereto as Exhibit 5. Pursuant to the Bankruptcy's Court order, Plaintiff's counsel intends to seek reimbursement of expenses incurred in the total amount of $43,282.57, and attorneys' fees equal to one third of the proceeds of this settlement, net of

5

expenses, in the amount of $402,239, which is $131,793 less than the attorneys' fees of $533,958.93 actually incurred.

Moreover, the amount to be paid to the Plaintiff was the result of a reasonable compromise achieved, in substantial part, through mediation with Judge Politan. Guided by Judge Politan, both Plaintiff and Defendants moved substantially from their opening negotiating positions during the mediation, which allowed the parties ultimately to make the small leap to the compromise they agreed upon days after the mediation. See Jaen, 81 F.R.D. at 697-98 (no collusion found where recovery to plaintiffs was reasonable). Finally, this settlement has been reviewed and approved by both the counsel to the Debtor and the counsel to the Committee of Unsecured Creditors.

The attorneys' fees to Plaintiff's counsel under this settlement are fair and reasonable and not evidence of collusion. The same is true of the settlement amount to be received by Plaintiff. This alone provides this Court with substantial bases for approving the Settlement Agreement.

**B.  Dismissal of this Action Will Not Prejudice Members of the Putative Class.**

The rationale for giving "less weight" to the possibility of prejudice to absent class members in the pre-certification context is that "pre-certification dismissal does not legally bind absent class members." In re Austrian and German Bank Holocaust Litig., 2001 WL 228107 at *4 (quoting Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978)) (additional citations omitted). Courts have found that, at most, absent putative class members have a "mere 'reliance interest' in the outcome of the putative class action." Id. (quoting Shelton, 582 F.2d at 1314-15) (additional citations omitted). This inquiry though is, "at best, 'speculative.'" Jaen, 81 F.R.D. at 697 (quoting Shelton, 582 F.2d at 1315). Any reliance that might be produced by the

6

filing of a class action "arises as a consequence of (purported class members) learning of the action through the news media or other secondary sources . . .. Also, reliance can occur only on the part of those persons learning of the action who are sophisticated enough in the ways of the law to understand the significance of the class action allegation." Id.

Here, the only publicity engendered by this action (that counsel for the parties is aware of) consisted of an article that appeared in Cheese Market News, on April 12, 2002 (shortly after the complaint was filed). That article, a copy of which is attached hereto as Exhibit 6, merely provided a basic summary of the action. Such minimal coverage could not reasonably have created any reliance interest. Moreover, settlement of this uncertified class action solely binds Ice Cream Liquidation, Inc. Absentee class members are not thereby prejudiced. Id. (citing Shelton, 582 F.2d at 1303). Indeed, the statute of limitations on the claims asserted in this action will not lapse for nearly three years. Thus, dismissal of this case will not prejudice members of the putative class.

## Conclusion

For the foregoing reasons, this Court should approve the Confidential Settlement Agreement and General Release among Plaintiff, Ice Cream Liquidation, Inc. and Defendants, Land O'Lakes, Inc., Dairy Farmers of America, Inc., Associated Milk Producers, Inc., Grassland Dairy Products, Inc., Keller's Creamery, L.P., and Madison Dairy Produce Company.

Dated: June 2, 2004

Respectfully submitted,

*Barbara F. Wolf*
_____
Robert A. Izard (ct 01601)
Barbara F. Wolf (ct 00603)
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106

**Counsel for Plaintiff**

_____
Robert G. Oliver (ct 00192)
Carolyn P. Gould (ct 05392)
David J. Crotta (ct 03235)
Mulvey Oliver & Gould
83 Trumbull Street
New Haven, CT 06511

**Counsel for Land O'Lakes, Inc.
and Madison Dairy Produce Company,
a Division of Land O'Lakes, Inc.**

**On Behalf of All Defendants**